UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

CHRISTY STRICKLAND, et al        CIVIL ACTION NO. 04-2266

VERSUS                           U.S. DISTRICT JUDGE DEE D. DRELL

COMMUNITY HEALTH SYSTEMS,
      INC., et al                U.S. MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is Plaintiffs' Motion for Judgment on the Pleadings, **Doc. # 34**, referred to me by the District Judge for Report and Recommendation.

This is a suit asserting negligence claims against the companies alleged to be owners of Byrd Regional Hospital in Leesville Louisiana (Byrd). Plaintiffs complain that a staff physician at Byrd, Dr John T. Ning who is a urologist, was not a competent physician but was allowed to practice and perform surgery at the hospital. Plaintiffs allege that Byrd had actual knowledge of complaints against the doctor. All plaintiffs claim damages as a result of what they claim was the incompetent and/or substandard treatment by Dr. Ning.

## Standard of Review

Generally, a motion under Rule 12 (c) is treated in the same manner as a Rule 12(b)(6) motion to dismiss. The pleadings are construed liberally. The court accepts all well-pleaded material allegations of the nonmoving party as true, and views all facts and

inferences in a light most favorable to the pleader. Johnson v. Johnson, 385 Fed.3d 503 (5th Cir. 2004). A Rule 12(c) motion should not be granted unless plaintiff would not be entitled to relief under any set of facts he could prove consistent with the complaint. Id.

In this case, plaintiffs have asked the court to strike the defense of applicability of Louisiana's Medical Malpractice Act, R.S. 40-1299.41, *et seq*,(LMMA or Act) because the LMMA is not applicable to claims, like plaintiffs', alleging "administrative negligence". Plaintiffs assert that the wrongful conduct they allege occurred before the plaintiffs were ever treated at Byrd and, therefore, was not "treatment related" within the meaning of the LMMA.

A Motion to Strike may be filed pursuant to FRCP 12(f) to test the legal adequacy of a defense. It is the plaintiff's version of a Motion to Dismiss. Because a Motion for Judgment on the pleadings is not the proper procedural vehicle to raise the issue, the court will treat plaintiffs' motion as a Motion to Strike.

A motion to strike will be granted only where it appears to a legal certainty that the defense will fail regardless of what facts could be proved to support it. AGA Correa & Son v. Nautical Gold Creations 2005 WL 823927 (S.D.N.Y. 2005).

## **Law and Analysis**

<u>Does a hospital have a duty to provide competent staff physicians</u>?

Plaintiffs allege the fault of Byrd to include (a) failing to obtain and maintain current credentials on Dr. Ning, (b) negligently credentialing Dr. Ning, (c) failing to develop policies and procedures to manage, monitor and oversee the treatment of plaintiffs, (d) failing to disclose the risks of procedures performed by Dr. Ning, and (e) "committing various acts and/or omissions which amount to administrative negligence...to be specified in detail at the time of trial." [See Complaint, para. 92].

Plaintiffs also claim that after the hospital granted credentials to Dr. Ning, it became aware of "grave concerns" of other urologists and patients about Dr. Ning's competence and "care and treatment". Plaintiff's further allege that the hospital failed to investigate the complaints, and allowed him to continue practicing in the hospital.[See Complaint, Para. 5].

A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. <u>Hunt v. Bogalusa Community Medical Center</u>, 303 So. 2d 745 (La. 1974). Thus a hospital may be liable

3

for its own negligence or it may be responsible for the negligence of its employees under the doctrine of respondeat superior. Armand v. State of Louisiana, 729 So.2d 1085, 1088 (La. App. 1st Cir, 1999)l; Pettis v. State 336 So.2d 521 (La. App. 3rd Cir., 1976).

In this case, the physician is not alleged to have been an employee of the hospital but was granted hospital privileges by the hospital which included the right to treat patients in the hospital and to perform surgeries there.

Many duties of hospitals have been recognized by the courts, including a duty to furnish the hospital with reasonably adequate supplies, equipment and facilities for use in the treatment and diagnosis of patients, a duty to provide adequate procedures for maintenance and safety of its grounds, buildings and equipment, and a duty to select its employees with reasonable care. See cases listed in Armand, supra, at 1087.

Similarly, a hospital has, by virtue of its authority to grant, deny or revoke staff privileges, a certain degree of control over the quality of medical care provided in its hospital. Sibley v. Board of Supervisors of Louisiana State University 490 So.2d 307, 313, (La. App. 1st Cir., 1986). Therefore, it has been held that a hospital which negligently grants staff privileges to an incompetent physician would be directly liable to a patient damaged

by that physician's incompetence. Sibley, supra.[1] See also, Griffin v. Kinberger, 647 So.2d 1270 at 1277-78 (La. App., 4th Cir. 1994)(a hospital has a duty to provide a competent staff to its patients). However, hospitals are not vicariously liable for the negligence of physicians who hold staff privileges, and it is well settled that hospitals are not insurers against physician malpractice. Sibley, supra; Griffin, supra. Hospital negligence is not proved merely by proving malpractice against a doctor in the hospital. Sibley, supra, at 313.

Having an incompetent physician on staff, or one with a history of allegations of providing substandard care, is, vis a vis the patient, peculiarly within the hospital's control. Therefore, I find that a hospital which negligently grants staff privileges to an incompetent physician or who fails to investigate complaints against him, continues to employ, and fails to terminate such a physician is responsible to those it injures for its actions.

Is a hospital's breach of the duty to provide competent staff "covered" by the LMMA?

Plaintiffs argue that their claims against the hospital do not relate to patient care but rather are claims of "administrative negligence" which negligence, they argue, is not covered by the

---

[1] The possibility that a hospital could be liable for failure to train or supervise a staff physician is expressly recognized now in the 2001 amendments to the definition of "malpractice" in R. S. 40:1299.41 A. (8).

5

LMMA.

Without question, there are some claims against hospitals which are not covered by the LMMA because they are not malpractice or do not involve patient treatment. For example, an ordinary trip and fall does not implicate the LMMA. Wild v. NS'NG, Inc., 898 So.2d 466 (La. App. 1st Cir. 2004). Neither does the hospital's failure to repair a wheelchair. Williamson v. Hospital Service District, 888 So.2d 782, (La. 2004).[2] Not every unintentional tort committed by a qualified health care provider, as defined by the LMMA, falls within the provisions of the LMMA; it is only those unintentional torts which constitute malpractice that do so. Williamson, supra, at 787.

We must determine, therefore, whether a hospital's breach of the duty to provide competent staff falls within the provisions of the LMMA.[3]

The LMMA applies solely to claims 'arising from medical malpractice.'" Hutchinson v. Patel, 637 So.2d 415 (La. 1994); R.S. 40:1299.41(I); Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.

---

[2] On the other hand, the hospital's failure to properly assist a patient in using an appliance such as a walker does involve medical care and falls under the Act. Dominick v. Rehabilitation Hospital of New Orleans, 714 So.2d 739, (La. App. 4th Cir. 1998). See also, Taylor v. Christus Health Southwestern Louisiana, 886 So.2d 696, (La. App. 3rd Cir. 2004).

[3] Plaintiffs claims of failure to obtain informed consent are clearly governed by the provisions of the LMMA. See Baker v. Williams, 825 So.2d 563 (La. App. 3rd Cir. 2002); Baham v. Medical Center of Louisiana, 792 So. 2d 85 (La. App. 4th Cir. 2001).

6

1992). The Act is to be strictly construed against coverage. Hutchinson, supra at 420.

At the time of at least most of the acts complained of here, the Act, R.S. 40:1299(A)(8), defined "malpractice", in pertinent part, as follows:

"Malpractice" means any unintentional tort or any breach of contract based on Health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient...."

The Act defined "tort" and "health care, in pertinent part, as:

"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another.

"Health Care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

In order to determine in a particular case whether negligent conduct is malpractice, the Louisiana Supreme Court has adopted a six-factor test. Factors to be considered include:

(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

(2) Whether the wrong requires expert medical testimony to determine whether the appropriate standard of care was breached;

(3) Whether the pertinent act or omission involved assessment of the patient's condition;

(4) Whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities that a hospital is license to perform;

(5) Whether the injury would have occurred if the patient had not sought treatment; and

(6) Whether the tort alleged was intentional.

Coleman v. Deno, 813 So. 2d 303 (La. 2002); Williamson, supra at 786. The most important two factors in this case are the first two.

Plaintiffs claim that the hospital failed to obtain and maintain current credentials on Dr. Ning, negligently credentialed him, failed to develop policies and procedures regarding the assessment, treatment, management and oversight of patients, and failed to disclose the risks of procedures performed by Dr. Ning. Plaintiffs also claim that after the hospital granted credentials to Dr. Ning, it became aware of "grave concerns" of other urologists and patients about Dr. Ning's competence and "care and treatment". Plaintiff's further allege that the hospital failed to investigate the complaints, and allowed him to continue practicing in the hospital.[See Complaint, Para. 5].

8

Some of the plaintiffs' assertions encompass a time inclusive of the dates of medical care by Dr. Ning and the hospital. Some, such as negligent credentialing occurred before the date of plaintiffs' actual procedures. However, all of the plaintiffs claim that the injuries and damages they suffered as a result of the hospital's fault occurred during procedures performed by Dr. Ning. In other words, the plaintiffs claim that they were injured during medical treatment by Dr. Ning as a result of the fault of the hospital regardless of when that fault occurred.

The only way that the negligent credentialing, failure to investigate failure to discharge and failure to obtain consent to procedures by an incompetent doctor could have caused damage to plaintiffs is through the "medical treatment" (as defined by the Act) of Dr. Ning. The negligent credentialing, failure to investigate, failure to terminate and failure to obtain consent are alleged to be causes in fact of the plaintiffs' injuries at the hands of Dr. Ning.

Therefore, I find that the hospital's conduct, as alleged by plaintiffs, in hiring, continuing to employ, failing to investigate complaints about him and failing to discharge Dr. Ning "directly involved and impacted the provision of health care afforded" the plaintiffs, thereby invoking the provisions of the state malpractice act. See dissent by Guidry, J., in Williams v. State, 801 So. 2d 463 at 464 (La. App. 1st Cir. 2001). The fact is that,

9

when these patients underwent surgeries or procedures performed by Dr. Ning, the hospital had a duty to provide a competent physician in the operating room at that point in time. Breach of that duty affects "treatment of a patient" and involves "health care". Thus the first of the <u>Coleman</u> factors is satisfied.

I also find that the second factor of the <u>Coleman</u> analysis is met. Expert medical testimony would necessarily be required in order to establish (1)whether Dr. Ning is properly qualified to perform procedures as a urologist (2) whether, in each of plaintiffs' cases, malpractice occurred, and (3) the standard of care owed by Byrd in the credentialing and investigating as well as in regard to the other claims by plaintiffs.

For these reasons, I conclude that plaintiff's allegations against the hospital fall within the provisions of the LMMA.[4] Plaintiffs' motion to strike the defense should be denied.

In so concluding, I acknowledge the contrary authority of Louisiana's 1st Circuit including the en banc opinion in <u>Bickham v. Inphynet, Inc</u>. 899 So. 2d 15, (La. App. 1st Cir. 2004), <u>Williams v. State</u>, 801 So. 2d 463 (La. App. 1st Cir. 2001), and most recently in <u>Eusea v. Blanchard</u>, 899 So.2d 41, (La. App. 1st Cir 2005). With

---

[4] It should be noted that some of plaintiffs' claims may be governed by the Act as amended in 2001. Those amendments changed the definition of "malpractice" to specifically provide that malpractice includes "acts or omissions in the training or supervision of health care providers...." Under the analysis above, the same result holds true for claims even before the amendment.

all due respect to the learned judges of the 1st Circuit, I reject the holdings in those cases as being inconsistent with the results which would have been reached by proper application of the Coleman factors[5] and as having been wrongly decided.[6] Instead, as noted above, I agree with the dissents in those cases.

IT IS RECOMMENDED that plaintiffs' motion, Doc. #34 be DENIED.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a

---

[5] Writs were denied by the Louisiana Supreme Court in Williams at 799 So.2d 1146 and in Bickham at 888 so.2d 876.

[6] In Williams, as in this case, plaintiff alleged that the hospital not only hired, but continued to employ and failed to terminate the doctor. Therefore, as Judge Guidry's dissent points out, the claims asserted against the hospital encompassed a time inclusive of the date of medical care and were really claims that plaintiff was injured by the fact of employment of the doctor. As such, the hospital's acts directly involved and impacted the provision of health care, thus implicating the LMMA.. Bickham, likewise involved allegations of continuing wrongdoing.
    The 1st Circuit's decisions also seem wrong when compared to its own decision in Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La. App. 1st Cir. 1979). In Cashio, the 1st Circuit held that a hospital's obligation to provide a clean and sterile environment during surgery "is squarely within the conduct classified by the Act as malpractice." It is difficult to articulate a meaningful difference under the Act between the hospital's duty to provide a sterile operating room and it's obligation to provide a competent doctor in that operating room.

copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the <u>30th</u> day of August 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE